## LYNCHBURG FOUNDRY CO. v. CITY OF PIKEVILLE.

Court of Appeals of Kentucky.

Feb. 22, 1952.

Francis M. Burke, O. T. Hinton, Pikeville, for appellant.

Wine & Venters, E. N. Venters, all of Pikeville, for appellee.

SIMS, Justice.

The Lynchburg Foundry Company sued the City of Pikeville for $117,643.44 alleged to be due it as the contract price of certain pipe, fittings and accessories it sold and delivered to the city for the improvement of the municipal water and gas systems. The answer denied the city entered into a contract for the purchase of this material, and averred it was not claiming same. An order was entered directing a return of the material to the company, which sold it at a loss of $60,497.21 after recovering same, and in an amended petition sought to recover this sum from the city by reason of its breach of contract. The company changed its cause of action from one seeking to recover the contract price of the material to one for damages for breach of contract. A general demurrer was sustained to the petition as amended. The company declined to plead further, its petition was dismissed and this appeal followed.

The petition as amended avers Pikeville, a city of the fourth class, owns and operates its water and gas systems and is authorized under KRS Chapter 96 to buy this material and pay for same by issuing revenue bonds; that the mayor and board of council made the purchase and the company delivered the material upon the promise of the mayor and councilmen to pass an ordinance authorizing the purchase of the material and payment therefor by revenue bonds; but the council failed and refused to enact such an ordinance. It is not necessary to refer to the answer of the city, or the amendment thereto, since the court sustained a general demurrer to the petition as amended and dismissed it when the company refused to plead further.

The question for decision is, can a fourth class city enter into a contract through its mayor and councilmen to purchase material for the improvement of the municipal water and gas systems without the passage of an ordinance authorizing the contract of purchase?

It is provided in KRS 86.110 (4) that a fourth class city may "provide for the purchase of all personal property necessary for city purposes" through its council. Under KRS 94.070 a fourth class city may appoint a board of public works, but where none is appointed, the board's duties shall be performed by the city council and such employees as the council may designate. There is nothing in the record showing Pikeville has a board of public works, hence its duties rest upon the council. The duties of the board of public works are defined in KRS 94.110 as "the construction, equipment, management and operation of any works the city may own for supplying the city or its inhabitants with water, light, heat or power", except as provided in KRS 96.530, and this last section has no application here.

It is provided in KRS 94.130 that before the Board of any fourth class city may make an expenditure in excess of $500, there must be an ordinance authorizing such expenditure and the contract let to the lowest responsible bidder. In City of Danville v. Shields, 240 Ky. 377, 42 S.W.2d 497, 498, this court held the limitation placed by statute upon the board of public works applies to the council when there is no such board. That opinion further said: "It is an unquestioned rule of construction that powers conferred, with a restriction upon the manner of their exercise, may be executed only in the manner specified."

It was written in that same opinion: "When powers are conferred to be exercised in a manner specified, there is an implied prohibition against the exercise of such powers in any manner substantially different from that permitted."

It follows from the quoted language that the city could only enter into the contract in question by virtue of a duly enacted ordinance.

The company argues that the city in making this contract was acting in a proprietary capacity, and is given express authority by KRS 96.350 through 96.510 to enter into the same. There can be no doubt that the city was acting in a proprietary capacity, or of its authority to make such a contract and to pay for the material with bonds payable solely from revenue received from the utilities. KRS 96.390; City of Bowling Green v. Kirby, 220 Ky. 839, 295 S.W. 1004; City of Hazard v. Salyers, 311 Ky. 667, 224 S.W.2d 420. However, the city can enter into such a contract or issue such bonds only after an ordinance has been adopted specifying the proposed undertaking, the amount of bonds to be issued and the maximum interest rate they are to bear. KRS 96.370.

It is next insisted by the company that where the city acts in its proprietary capacity under the terms of a statute authorizing it to act, the failure of the city to comply with such statute which results in a loss to the contractee renders the city liable for damages. It cites Knepfle v. City of Morehead, 301 Ky. 417, 192 S.W.2d 189; City of Covington v. McKenna, 242 Ky. 452, 46 S.W.2d 760; City of Frankfort v. Fuss, 235 Ky. 143, 29 S.W.2d 603; City of Cattletsburg v. Citizens National Bank, 234 Ky. 120, 27 S.W.2d 662; City of Prestonsburg v. People's State Bank, 255 Ky. 252, 72 S.W.2d 1043. None of these cases are in point. All of them except the Fuss case deal with the liability of a city because of its failure to comply with a contract relative to the collection of street improvement bonds after the city had passed an ordinance authorizing it to enter into the contract for the improvements and to collect the assessments to pay the bonds. The Fuss case concerns an ordinance providing for an indebtedness in excess of the constitutional limit.

The judgment is affirmed.